Good morning, and may it please the Court, my name is Randall Jones, and I represent Nevada Restaurant Services, otherwise doing business as Dottie's. I'm at the podium here with Mr. O'Reilly, who represents Jackpot Joanie's, and because this Court has consolidated these arguments, Mr. O'Reilly and I got together and discussed dividing our time so that I'm going to do my best to try to present my position in the subjects I'm going to discuss with you all this morning. He's going to discuss in about two and a half minutes each for rebuttal to the extent we can accomplish that goal. Okay. With that said... Why don't we go ahead and have Mr. O'Reilly take a seat, and we'll give you your five minutes, and then allow him the five minutes. We'll try not to cross you up on that, so, and if you want to defer questions to him, we'll defer those questions to him. Very well, Your Honor. Sure. Well, so with that said, at one point I did want to make, by the way, that the arguments that I'm going to be making this morning apply equally to Jackpot Joanie's, even though I may not specifically reference that company in my discussions. And the discussion that I would hope to be able to get to today, I'm going to try to get to, are the three subjects are going to be the violation of our respective clients' procedural due process rights, violation of our clients' substantive due process rights, and how the enactment of the county ordinance at issue today violated our clients' rights to equal protection under the law. And we believe that any one of the arguments that we're making today, whether it be me or Mr. O'Reilly, in and of itself would be sufficient to justify a reversal of the district court's decision. So I just want to make sure that point is made. And I want to briefly talk about the history of this business, because I think it's really important to understand for purposes of the arguments today on the law. The reason I say that is my client was sort of the pioneer of this particular business model. And the importance of that is, over 20 years ago, my client came up with a business model that was based upon restricted gaming license of 15 machines. And they built their business around that business model, as did the subsequent companies who followed that business model, like Jackpot Joanie's. And as a part of that process, they spent millions of dollars over the last 20 years building this business up. And in the record before the county commission, you'll see there was reference to the fact that most people, other than the clients, didn't think this was going to work. They invested substantial sums of money, entered into long-term leases, entered into many contracts with vendors. They've employed hundreds of employees over the period of time. Roberts. Counsel, I think we're generally familiar with that. You're going to run out of time long before you get to your arguments if you're not careful. I appreciate that. So let me try to move on, then. So with that point being made, that there is a great deal of money that has been vested in this, and they've been approved at every step of the way by all of the agencies they went before for these licenses, including Clark County. What's your strongest argument? Well, that's a — I understand the question. I have a difficult time in pinning one down. I think both procedural due process and substantive due process — Let's start with procedural due process. What's the problem? What process weren't you given? All right. Well, the process we weren't given was that they didn't follow their own statutory law, and they also — excuse me — ordinances with respect to how they went through this process of trying to change this ordinance. If they didn't follow their own statutory provision, does that state a constitutional claim? Well, it is — I thought the courts were very clear that the failure to follow — to follow state law was a matter of state law and not necessarily a matter of constitutional law unless it also violated constitutional norms. So what constitutional norms were violated here? Well, first of all, I guess that would go to the question of whether or not our clients had a protected property right. And I believe that they did. And I think that the Ninth Circuit has held that. And I also think that the Nevada Supreme Court — They had a protected property right in their licenses, but no individual license was deprived here. Well, Your Honor, that's an interesting point, because Judge Dawson, for example, which I assume is what you're referring to, said, look, there was no revocation. And so if there's no revocation, you can essentially — Well, there are actions short of revocations that will invoke due process in an individual position. But this is a legislative action, not an adjudicatory action. Well, Your Honor, I — That certainly will take you out of the Burgess case that you've cited. This is not even close to Burgess. Well, I would respectfully disagree. And the reason I say that is because you can have an adjudicatory process that is acting or trying to be a legislative process. How many taverns in Clark County were affected by this ordinance? How many taverns total? Taverns, yes, total. Oh, I can't — it was over — I think it was over — it was hundreds of taverns, over a hundred, certainly. And that makes this case very distinguishable, right? I mean, what you're talking about is where legislation affects one particular parcel owner or maybe two businesses exceptionally. And that's not the case here, that hundreds were affected by this. And scores sent in letters in opposition. Well, actually, hundreds would have been affected, but the way they wrote the statute, hundreds weren't, only a very few. And we know from the Squaw Valley case that you can have — How many is very few because of the grandfathering you're saying? Well, partly because of the grandfathering and also because of the way that they essentially changed this ordinance to really only apply to this particular business model. They targeted this business model. And remember, there was no reason for doing this, that the County Commission didn't have a groundswell of constituents that came forward and said, we have a problem here. This was driven by the competitors who clearly were jealous, who brought the problem to their attention and said, we want to do something to — Right. It happens. It happens all the time. It happens in every jurisdiction. It certainly can. But if you have a protected property right, you can't do it where you violate procedure. What's a protected property right? The protected property right is — well, certainly we believe that it would be where a party has a reasonable expectation of an entitlement derived from an existing rule or understanding that stemmed from an independent source, in this case, the ordinance that was in place and the statute. That would — if your theory is correct, that would fix the ordinance. That would mean that in perpetuity, nobody could do anything to it. Well, Your Honor, I would put it this way. In terms of a property right, if you think about this and apply it to the hotels, the hotels go out and borrow millions, including hundreds of millions of dollars based upon that property right, that license. They could not borrow money from the bank if that — those banks did not believe they had a protected property right. Right. It could not be arbitrary. And if they didn't think that Nevada tomorrow, that the Nevada legislature would, for example, decide to ban gaming in the State? Well — That's an assumption that the banks are making, but there isn't anything that would prevent the Nevada legislature from deciding to ban gaming in Nevada, is there? I would — I would disagree with that, Your Honor, based upon — including — Is there a constitutional right that would prevent the Nevada legislature from deciding to ban gaming? What about — what if it decided tomorrow to ban brothels in Nevada? Because we have brothels that have — that have licenses? They have — they have a vested constitutional right to that, and the legislature couldn't do that? And I am running into Mr. O'Reilly's time, but I want to answer your question. I'll make sure that Mr. O'Reilly's got his full time. I want to answer your question, obviously, but — so let me — you used the example of a brothel. Burgess is exactly the case on point, because they could go in there in certain circumstances and say to — Right. But Burgess was about a license — a license renewal for a particular brothel. Could — is there any constitutional principle that would prevent the Nevada legislature from deciding to ban brothels in all counties in Nevada? Well, I certainly think that the procedural due process — depending on the process that was used — But what case have you got that would support that? Well, I think that, again, I know you disagree with this, but I think Burgess and I also think that the Cooper case — Counsel, Burgess isn't even close. This distinction, the Lundiner bimetallic distinction, is over 100 years old. The Supreme Court made this clear a long time ago, that legislative and adjudicatory procedures are entirely different. Burgess was an adjudicatory procedure. This is a legislative process here. If the adjudicatory procedure is masquerading as a legislative procedure, because that's what happened here. Essentially what they said is, we're going to say it's legislation, but we're not going to follow our own procedures. Under Clark County Code Section 8.04020, you have to give a hearing to show cause to even restrict a gaming license once issued. That's their own code. They didn't do that. In the manner in which they profess to have given notice, that was so flawed in so many different ways. It was flawed in the sense that it did not give — there were four different things that were thrown out there that changed over the course of time. The — they didn't follow — they failed to comply with the statutory rule, the business impact statement. They didn't follow that. Then, during the course of the discussion, actually, they changed the text. During the hearing, after the hearing was closed, they changed what they were going to vote on. And in fact, it was so bad, Your Honor, that they said to themselves, we're going to have to wait and see what gets written up after we voted to see what we voted upon. That procedure was fatally flawed. Okay. And the failure to follow Clark County's procedures, and let's assume that you're correct, that they failed to follow their own procedures, and that states a due process — a constitutional due process violation because of what? Well, first of all, I think they didn't follow their own procedure for one point, but they also failed to follow State statute, which was the business impact statement. You still haven't answered my question, counsel. I'm sorry. I apologize. My question is, what — how does that violate the United States Constitution? You may have violated — you may have violated State law. That's a problem for Nevada to solve. But you came here alleging that there are constitutional violations. I need to know, what provision of the Constitution does that violate? I believe that it violates the 14th Amendment, that the due process, the procedural due process was not followed. In general, the failure to follow State law is not an independent violation of the due process clause. That's pretty well established. Otherwise, every violation of State law would become a violation of the due process clause as well. That's just not the law. Well, again, the procedure as I understand it, and if that's the Court's position, then I don't know how it could respond to that. That is our belief that between that and also the Cooper case, where the Court even remanded a case, it's an unpublished case, it's a Ninth Circuit case from 2013, where the — Cooper v. Clark County, where the applicant was just seeking a — had an application. And the Ninth Circuit held that he had, at least potentially had, a protected property right, and it was not the proper procedure, which was a State procedure. Can you cite any case where the Court found that the action was legislative, not adjudicative, and I know you dispute that here, but assuming that some court found an action to be legislative and then found a procedural due process violation, has that ever happened? We have not cited a case, Judge Sennott, to that effect. But I would tell you that this creates an incredibly insidious loophole in my mind, that if you say that you can masquerade an adjudicated process as a legislative one, where the fact — the reality — not what you call it, but the reality is the same, because here we're talking about a restriction that if this restriction — again, this business model said we have to build it this way, we've invested these millions of dollars, and if you change it, and if your goal is to change it so that we don't revoke it, we're not going to throw you out of business, ostensibly, but they know the effect of that change will be the same, that it is adjudicative because it puts you out of business, it just does it by a matter of stealth. We think that's wrong. That should never be supported by this Court or any court, and that's — that reason alone, we think, is a grounder. Is there anything in the record that shows that there are only one or two businesses, the two appellants here, for instance, that were affected adversely by this ordinance, that there were not more than just one or two? I mean, out of the hundreds, out of the hundreds that are affected, you say this model was affected somewhat uniquely. Is your client and the other — There are less than five that I recall, Judge Chen, that have a business model that is set up like this. Is that in the record? It — and I'm sure I could find the number, but I — off the top of my head, I cannot answer that question. I apologize. You're saying five — five businesses that run this, that may have multiple taverns. That's true. That's true, Your Honor. Okay. All right. We've taken you well over your time. Let's hear from Mr. O'Reilly. For your planning purposes, Mr. Jones, I am going to afford you the time for rebuttal. Thank you very much. Thank you, Judge Bradby, Judge Chen, and Judge Christen. John O'Reilly again for the Jacoba-Joni entities. The three points that I've chosen to address, consistent with the comments of Mr. Jones that our comments and arguments would apply to both clients, even though we only represent one group, address, one, the fact that this ordinance, the 2011 Clark County Ordinance, violates the clear requirements of the Nevada laws, which mandate competition in gaming in Nevada and prohibit anti-competitive ordinances. As I think is clear, competition is the basis of the Nevada economy. Legislature in Nevada has mandated competition when it comes to gaming. Point number two that I would address is that this 2011 ordinance was enacted by Clark County without following the requirements of their business impact statements. If you look through the business impact statement provisions, generally they require an economic analysis in terms of what the effect is on the economy in the state of Nevada as a result of this legislative enactment. There's no analysis, period. There are comments, there are conclusions. There are no statistics, no analysis, no comments specifically in terms of the economic analysis or the process that was used or not used. Consequently, it's our belief that the motion for summary judgment to conclude without any evidence, without addressing any facts, without discovery that the business impact statement was fully compliant is clearly unjustified on this record and should be reversed. The third item addressed is the fact that this ordinance has now been found by Clark County and its district attorney to be fatally flawed. It's ambiguous, they say, and unenforceable. As publicly stated by not only the Clark County manager, the director of business licensing, the chairman and other Clark County commissioners, as well as would be fully established if this matter was reversed and remanded to provide additional discovery. Is that a constitutional error? Is that a matter of state law that we can enforce? Pardon, Your Honor? I'm trying to figure out what the hook is here. There's lots of laws in which we find ambiguities. We discover them all the time. Sometimes we can reinforce them if they're in the criminal context because we have to be very careful about what kinds of rules we impose on each other. But there's lots of ambiguities in law. It's just part of the substitutes of the limitations of language. So if something is ambiguous or they're having difficulty enforcing it, what hook does that give the court to overturn the regulation? Well, I think we're talking here overturning the summary judgment that was entered at the lower court. And I think that there's no support for the summary judgment that was entered against our clients. That's the issue. You mean because there are issues of triable fact? There are issues of fact that are triable? There are issues of fact that are triable before you can reach a conclusion that a business impact statement was fully, a requirement was fully complied with. Well, okay, the business impact statement is a whole different argument from the idea that this was fatally flawed because the regulation itself is ambiguous. Well, the argument that the regulation, the ordinance is ambiguous is one that we made. It's one that we've asked the court to take judicial notice of the supplemental matters we've submitted. Well, suppose that we agreed with you that it's ambiguous, okay, and then what? We can overturn things that are ambiguous? Is that a general principle of law? Is it a principle of constitutional law? Is it a principle of Nevada law? What gives us the authority to overturn ordinances that we find ambiguous? I find lots of things ambiguous. Well, in this case, your honor, the entity who is the proponent of the ordinance as being valid has concluded that it's not valid. And to conclude otherwise at the Ninth Circuit or district court is inappropriate. You're now referring to the post-briefing evidence from the conversations before the county commission where they've said, well, we don't know how to enforce this. We're having trouble enforcing it. That's correct, your honor. And as indicated in there, they've abandoned the ordinance and there's other ordinances that have followed it. Well, if they've abandoned the ordinance, what's the problem? Well, the problem is, your honor, that in the meantime, with their approach to lawmaking, they've cost our clients a lot of time and a lot of money. So in essence, I would say that it's an admission of their inadequacy, their liability, and their responsibility, and that it should be litigated in terms of what the damages are. Mr. Riley, let me go back to the question. Let's assume that the ordinance is difficult to enforce. The county commission is not sure what to do about it. And that the county commission now thinks that they probably could have been more specific in the adoption of this ordinance. What gives this court the power to overturn an ambiguous ordinance? Well, at this point in time, your honor, I would request the court refer it back to the district court because there really is no ordinance to address. So I don't think you have to address that today. If there isn't an ordinance to address, then what are you complaining about? We're complaining about the fact that they have enforced an unenforceable and an inappropriate ordinance and cost our clients lots of time and money. But you can't now bring a tort suit against the county and bring it before us trying to collect damages for the money that you've spent in these hearings. Well. I'm trying to figure out what it is that you want us to do. If the ordinance isn't being enforced, then it sounds like you've at least partially succeeded, but that doesn't require this court to do anything. If you think that the ordinance is ambiguous, I'm still trying to figure out what principle of law allows a court to overturn ordinances that are ambiguous. It's not a criminal ordinance. It's a regulatory provision. There are lots of ambiguities. We see them every day in what we do, but we don't go striking down every law that we think has some ambiguity in it. I understand that, your honor. By the same token, I don't think that the court should enforce and mandate the enforcement of a law such as that. I don't think anybody's asked us to mandate enforcement of anything. There's no writ of mandamus here. If what you're referring to is the question of mootness, I think that the issues that have been raised and addressed by the Ninth Circle when it comes to mootness in terms of capable of repetition and yet evading review are both issues here, because as indicated by the record before you, repetition has been the history of this process and is ongoing. So it's not only capable of, but it has been and is being repeated. It needs to be reviewed is our position. Secondly, it could evade review if it's not referred back after reversal by this court. Has this ordinance been enforced in any way at all? It never got off the ground? Yes, it has. That's the reason it was being litigated, because it was being enforced, and our position was that it was unenforceable, that it was one that shouldn't be enforced for a whole lot of reasons, all of which we've expressed in our briefs, including the fact that it was targeted legislation to try to put, as indicated in the record, people out of business. And you're saying that the enforcement has been stopped or stayed or taken off the table? Well, of that particular ordinance as written, there are other ordinances now that have gone forward after that that are modifications of the same ordinance or new ordinances, I think it's actually been structured. So there was one four years before this dealing with these same issues between these same parties. It's a fight between the big casinos and the little casinos. The big casinos want to use the legislators in Clark County to put the small ones out of business or put certain ones out of business. If they're successful, they shouldn't be in business, and they want to try to take that business from them and put them, and they're using the Clark County legislature for that purpose. That's among the other improprieties here. Is your strongest argument that there was a constitutional violation that entitles your client to damages, a due process? Is that your strongest argument? I think that's obviously part of the argument, yes, Your Honor, and that's the one that Ms. I just want to be very clear because you're way over time, but I struggle with the same question Judge Bybee has about what's the constitutional violation that entitles your client to damages, because I understand this ordinance isn't being enforced and you're not worried about that. You think that you were put to a lot of trouble and your clients are put to a lot of expense because this process was used unfairly, but is that the strongest argument that there was a constitutional violation? That's been our argument, Your Honor. I've heard Judge Bybee and I hear you loud and clear, and I think there apparently is a difference of opinion between the position we've taken and what the learned Judge Bybee and you are saying. I think that if we're not in the right form, send us back to the district court, reverse it, and we'll start over in the appropriate form. But in the meantime, there are incredible injustices that have been done that are continuing that need the right form to address the issues, to minimize the damage that the large casinos can do to these small businessmen and women who have invested their life savings in some of these businesses, and others who have, as Mr. Jones indicated, pioneered a model that was approved not only by the state gaming regulators, but by this very body, Clark County, who took and received their applications, granted their licenses, and took their money, approved not only their licenses, but went through the building department, the fire department, the health department, every one of them required them to jump through hoops, approved them every step of the way, including their floor plans, including every camera and security, and now come back years later and say, you know, we were just kidding. You're really not approved at all. We're going to change the rules and cause you to move your bar, move your cameras, move your chairs, put more chairs, put more tables in, and if you can't do it too bad, you're out of business. And by the way, that's what we're really targeting here, is to try to put some of you out of business. They made that clear, and if it's we're not in the right court in terms of getting a remedy, hopefully you will fashion a decision by this court that will allow us to get the right court so that there is a remedy for these people who are being abused. Counsel, could I just one final question. Is your strongest state law claim the failure to get the business impact statement? Your Honor, I would probably equate that in the competition argument. I mean, competition is so critical to Nevada. I mean, we've at the state level have tried to maintain a balanced form. If you think about every casino and every gaming property, they have the same tools, so I think equal. Thank you. Have I still been able to reserve time, Your Honor? Yes, I will allow you time for rebuttal as well. Thank you very much. Mr. Dillard. Thank you, Your Honor. May it please the Court, Tom Dillard on behalf of the defendant in Pele Clark County. This matter is on appeal of two distinct decisions from the United States Court of Nevada from two jurists, I think two very comprehensive opinions in this case. The first on a constitutional level addressing the procedural due process, substantive due process, equal protection. The second being a very extensive opinion on the state law issue. However, both those opinions have jointly concurred that that which was done was a reasonable and proper exercise of legislative authority by the Clark County Commission, which was rationally related to legitimate governmental objectives. They being two of them. It sure looks like these folks got strong-armed, doesn't it? Your Honor, I think the record shows that there was an issue in the case or in terms of these taverns, of what they call a proliferation of slot arcades or slot parlors. And taking advantage of what the commission, I think, ultimately decided five to two was a loophole with respect to what Mr. O'Reilly, in fact, admitted today, that although they were supposed to have a license for restricted gaming that's incidental to a business, these were really little casinos. Do you agree that only about five businesses with this model are really adversely affected, or is it a much larger class? Your Honor, I don't mean to be evasive. I just don't know the answer to that question in respect to it. I can certainly tell you it was a countywide ordinance. It amended the code across the board, gave all the license holders two years to comply with the new restrictions. It was a matter in terms of a procedural aspect that notice was given to all the stakeholders. They were all brought involved in not only offering comments in respect to the business impact, but also presenting an argument with counsel at the hearing. These were, I think, the most vocal of the folks that were affected or the license holders were affected, that is, Dottie's and Jonie's. There were others. In terms of how many licenses they hold, that's not in the record on April 5th, 2011, from the board. Counsel, I have two questions for you. They're very broad questions, so I'd like you to address both of them if you would. And I may have some other questions as well. But let's start with the first one. The first one is, has the ordinance been amended since the suit was filed? So is the ordinance that we have before us, the ordinance still is on the books in Clark County. That's question number one. Second question I'd like you to address is, is the ordinance being enforced? Your Honor, I would say from the outset those are matters that aren't in the record. Okay. That's okay. I'd like you to tell me what the answer is anyway. I'll do my level best, but my representation for the county has been in this suit, and I'm not aware of all the particulars in terms of that which has occurred after the briefing. I am unaware that it has been, that this particular statute has been taken off the books. I can't tell you. Has it been amended in any way? Not that I'm aware of. I can tell you that there has been discussion statewide in terms of reaching some consensus in this. That's what I have heard. But I haven't been involved in that to any degree. I know this is an appellate court, and jurisdiction is very tight here. Those are answers that I can't provide. As far as you know, as far as the county is concerned, the ordinance that we have before us is still the ordinance that's on the books. Yes, Your Honor. Okay. There has been discussions about amending it? Yes, Your Honor. Okay. Because that looks like that's in the materials that the appellants have asked us to consider. I would agree, Your Honor. Okay. But as far as you know, no actual, the ordinance hasn't actually been changed. That's my understanding. I know there was some talk about bringing the parties together to do it, but to my knowledge it has not happened yet. Whether it's imminent or not, I do not know. Is the ordinance being enforced? Your Honor, I've read the same materials that you have, and there's been no matter of this record of anybody not, or of anyone cited for not being in compliance. There's no evidence in this record of enforcement. Correct. All those matters were after the briefing, and, in fact, after Clark County prepared its answering brief. Was a business impact statement prepared? Yes, Your Honor. There were four of them prepared. I'm sorry? There were four business impact statements prepared. And is it your position they were adequate? Yes, Your Honor. Your Honor, I would just simply refer to the opinion of Judge Gordon. That's the second decision in this case. He went through it lock, stock, and barrel on all those levels. Judge Gordon did find one. I think he considered a technical infirmity with respect to that. The business impact statement did not express why, at that point, the county amendment was more restrictive than the state-level threshold. And that was a mandatory requirement under the statute, right? I mean, that's one of the things that you're supposed to do with the BIS. Well, the business impact statement indicated in there in part of the effects that this was done to, in favor of those that were seeking to eliminate slot parlors or slot arcades. But it doesn't address why the county had to go beyond existing state and federal law. And I think that's a requirement, isn't it? Well, Your Honor, I don't know that it said why. There's certainly a matter of what's in the record that the county commission had made the determination that the proliferation of these businesses were operating restricted licenses as their primary basis of business and income. That there was a loophole with respect to these gaming is supposed to be incidental, that is to operating a restaurant, operating a bar, a convenience store. That these were just simply mini casinos. Now, did it say that we have to, the business impact statement indicates specifically that there needs to be a bar up there and these games embedded in the bar and space in a restaurant to eliminate those slot parlors or slot arcades. It didn't connect those dots specifically in the business impact statement, but that was all a part of the notice from the get-go as to why they were there. That's why there was the comments were all provided. So the why's could be inferred from the rest of the business impact statement. Correct, Your Honor. I'm not sure I understand that. It's probably the acoustics because I was having a hard time even getting all of Judge Shen's questions. But I understand you to say that your position is that the BIS was adequate, but you were just getting in response to Judge Shen's question around to telling me why that is, even though it had this gap. Well, Your Honor, I guess the way Judge Gordon put it, it's a matter of specificity. And I would say from a general standpoint, there was information in the business impact statement that this was done to eliminate the proliferation of slot arcades. Now, the question You have to infer that? Is that what you're saying in response to Judge Shen's question? You have to sort of read between the lines there? Is that your response? What Judge Shen asked me was, did it state in there, at least as I understood, that why was it necessary explicitly to go above what the state is doing to eliminate those slot parlors? And I said, no, that information isn't in there, other than to say that there was four different proposals on the books with varying levels of compliance or varying levels of objective indicia of operating a casino as an ancillary or incidental basis. Counsel, if Judge Gordon finds that there's substantial compliance with the BIS requirement, let's suppose that no BIS had been prepared at all. What power does this Court have over that? Well, Your Honor, let me address it in two respects. First, from the primary jurisdiction, from a constitutional standpoint, that the case law is clear, and Your Honor has indicated, suggested it, that a state law violation absent something extraordinarily egregious does not constitute a constitutional dimension. And so there is no original jurisdiction claim for which the Court could look at the process. Okay. Well, let's suppose that we had some due process claim that would allow us to see it under ancillary jurisdiction. If we were a state court, is there a remedy in state court for if the county, the Clark County Commission fails to prepare a BIS? Well, the remedy would be the mandamus availability, the mandamus petition, NRS 34.160. In this case, Your Honor, in terms of that particular issue, I would refer you, again, to Judge Gordon's opinion with respect to he mined the law of Oregon, California, and the Federal analog in terms of what's the standard of review by which to examinate the sufficiency of the BIS impact statement. And he went to the state court. What happens under state law if one were to find that this was a substantial violation, a nontechnical violation, et cetera? You said under Nevada law, mandamus. What actually happens? What would a court do? Your Honor, I don't know the answer to that. All I'm saying in terms of the procedural remedy would be to seek judicial review. In terms of the law, there is no Nevada law on the books in terms of what's the level of specificity need to be compliant with that statute. That's why Judge Gordon went to Oregon, California, and Federal law to assess the standard of review. I wish I wrote the brief worthy of his order. I think it's very good in terms of that analysis. And I'm unaware of any other law outside of the state of Nevada that suggests if you do not follow the business impact statement or environmental impact statement to the nth degree, it will invalidate the legislation absent really prejudice. And ultimately, Judge Gordon determined there was none here because of the extensive involvement that's been briefed in terms of the due process that was given, notwithstanding the lack of due process property interest, of having a meaningful opportunity to be heard. They knew exactly what was at stake. They knew exactly what the competing issues were going to be. Joni's and Dottie's both had learned counsel, addressed the board, give a chance to rebuttal. They had much more argument than ---- Well, there certainly was lots of process here. But the purpose for an EIS is to inform the decision makers, the policy makers, of the consequences of their action. And if you don't have a BIS that's been adequately prepared, then the Clark County Commission may be shooting in the blind. They may think it's a terrific idea in theory until they find out what the actual economic impact of it is going to be. Well, mind you, Your Honor, the only infirmity that the district court found was just in the connecting the dots of why more extreme. Okay? But there was ---- the board was well aware. In fact, there was ---- many of them had differing proposals in terms of what level of compliance they wanted. There was four different ones so that the competing interests could be meted out in that respect. And what ultimately happened was an amalgamation, a compromise of all those four particular ordinances that they culled some from column A and some from column B to fashion it together in order to reach an equitable decision. So the suggestion that immediately is evident here is they did consider ---- that's what was obligated on the BIS. They ought to consider it. There was no obligation they must reach a particular outcome in the case. And that's what all this is about. They don't like the outcome. But there is not only a property ---- there's no due process right there. What you have here really is an argument to revive the Lochner era doctrine of substantive due process in economics realm. That hasn't been the law for 75 years on the constitutional side, and there's no right to an outcome of what they want on the state law side or considering making a decision on those BISs. And that's what Judge Gordon decided in about a 30-page opinion on every single level of what was required. Did they meet it? Yes, except for one. And regardless, the board was adequately advised to make an informed decision, and the public was adequately apprised to meaningfully participate. What about the public other than the appellants here? I mean, isn't that one of the purposes of a BIS is to inform not only the decision makers and those directly affected, but the general public so that they might opine if you have a critical or a mandatory element that's missing? Doesn't that compromise the public information and public participation? Well, Your Honor, I think your question goes back to what process was given. And the record indicates that all the stakeholders, all the license holders, were sent the questionnaire in order to fill out their objections, that it was published in nine different publications. In terms of this is on the table, you have a deadline of March 28th to provide us what information you want. That was extended out. This process was pretty protracted and exacting with respect to getting the word out and having people have notice of the word and a meaningful opportunity to be heard in this regard. Let me go back to the constitutional question for a moment. If one were to find that the ordinance was really targeted at two businesses, even though it may have affected more, does that create any kind of a substantive due process or equal protection problem? No, Your Honor. If it did, then all the case law that the Supreme Court has issued on what is substantive due process, that it's very narrow outside the personal autonomy and marital provisions, that all you need to allege is a subjective intent of malice to create an issue of fact. And the case laws replete that that's not sufficient, that it ultimately is an objective inquiry as to whether there's any rational basis at all, even a hypothetical one, to find a legitimate governmental objective. And both lower courts made that decision in favor of the county. Okay. Thank you, Mr. Dillard. Thank you. Mr. O'Reilly, are you going to go first? Yes, Your Honor, with your permission. Let's put two minutes on the clock. To address a few of those points that were addressed by Mr. Dillard, first of all, there is no business impact statement on the ordinance that was enacted. There were four different provisions. There were four things that they claimed were business impact statements, but we claim none of them complied with the law. But the ordinance that they actually ended up enacting had no business impact statement. As Mr. Dillard says, it was an amalgamation of these four drafts they had out there. And, frankly, in over 40 years of rulemaking, I've never seen a process like this. They were not that different from each other. Well, you know, in terms of the BISs were not at all different from each other. The BISs were all the same. Assuming it qualifies BISs, the — It was sort of a general approach. Here's generally what's going to happen if we adopt restrictions like this. And then they can fiddle with whether they want, you know, 2,500 feet or whether they want 3,000 feet between these businesses. So when you argue there's no BIS, is your argument really that they needed to, they were obligated to prepare a new one, a different one, after they decided to make an amalgamation? Yes, Your Honor. Exactly. I think that — and the business impact statements were legislatively described to describe the economic impact. They need to do just that. They've done none of that in the four that they sort of cookie-cut and put out there and absolutely none for the one they ultimately enacted. Counsel, does that give rise to any federal claim? Pardon, Your Honor? Any federal claim in there? We believe there is, as we've alleged. I think we've addressed that with you and Judge Bobbie. I think that — We may have a state law claim. We may also have a state law claim if we don't have a federal claim. And I think that, as I've said earlier, my hope is that whatever this court does, it will fashion a remedy that will at least allow that to happen as opposed to this to go passing in the night. I see I'm almost out of time. I've got just a couple seconds. I think that as Mr. Dilley goes back and confers with his client, he will find that this ordinance has been dramatically amended and he will also find that there was enforcement of this ordinance and the next ordinance and the next interpretation of the ordinance after that. So I think there are substantial differences. And the big business, little business, these properties that they've chosen to classify or describe as slot arcades or parlors, I would remind the Court that these were all floor plans and businesses that applied for and were licensed by Clark County that is now calling them something different than what they permitted them for, licensed them for, approved them for, not only as businesses, but the very floor plans that they had were all approved by every department in Clark County. And they've chosen to give them a different title so they could cast dispersions on them and benefit the large casinos at the expense of these taverns and bars. Okay. Thank you, Mr. O'Reilly. Mr. Jones. Thank you very much, Your Honor. And I'm going to make one real quick comment about the business impact statement. I think it's important for you all to understand as well is that what was not addressed in any of the business impact statements, amalgamation or not, was the retroactivity of 20 years because it couldn't have been addressed since that wasn't even brought up until after the public hearing was closed. That probably had the greatest economic impact of just about anything they were considering that day, and it could not have been addressed in the business impact statement. Getting back to the procedural due process and trying to address a question you asked me, Judge Bivey, that I was struggling to find an answer for is, okay, wait a minute, why is federal law implicated here if the state wants to do something to change its own ordinances or this county does? And I was trying to think about that. Assuming there is a procedural flaw, you have to have a property right, a property right is protected, and you have to have a deprivation of that right. But I look at the Burgess case and it reminded me, the Burgess case cited Roth versus, what was it, Roth versus, or Board of Regents versus Roth, which is a United States Supreme Court case. And so the Nevada Supreme Court at least felt there was a, the 14th Amendment was implicated in that case. And then if you look at the procedure that was followed here, it is flawed. It was flawed in so many ways. And especially at this stage of the proceeding to say, no, this case is gone. We think it's completely inappropriate and improper. So, but now I want to switch to, quickly, to substantive due process. And I know, Justice Christian, you said, what's your best argument? I'm trying to choose among puppies, so I have a hard time with that one. But having said that, the, we believe that there was a violation of substantive due process because there was no manifest public interest here that was rationally related to any legitimate government interest. And here's the point. Look at the record. It's stated in there. It says, yeah, there, in fact, Judge Jost said, well, there's lots of public interest here, the health, welfare. But that's just talk. There is nothing in the record that backs that up. And the county could not point to anything that supported the fact that there was a legitimate public interest here. That's the point. The competitive. Because you would concede that the original ordinance, which limited gaming to an incidental purpose, was there was a public interest supporting that, right? You're not challenging the original licensing scheme. Well, I have to answer your question this way, Judge Chen, is this whole question of incidental has been debated and debated and debated. And it goes back in the record, in this record, because it was talked about when Dottie was first licensed, way back in the 90s. Who, how do you define incidental? And incidental has never been defined. And Clark County has continued to this day, does not have a definition of incidental, and has licensed Dottie's as a restricted gaming license with 15 machines. So incidental is a red herring. It is not the issue here. What it was used as a pretext. Are you suggesting that the original ordinance was unconstitutional as well? No, no, not at all. What I'm suggesting is. You concede it was constitutional. Well, I'm not challenging it. And so we've never even looked at it. But if it was constitutional and the county finds that there's a loophole, however you define incidental, why doesn't it have the constitutional power and the interest to further that by saying we're going to close this loophole? Judge Chen, you ask, I think, a very insightful question. But here's the reality. That's not an ordinance. That's a state statute. And the State Gaming Control Board controls that issue. And the State Gaming Control Board has never found that our clients, and to this day, continues to license my client and Jackpot Joanie's as compliant with that state statute defining their business and that gaming is incidental to their business. The county was trying to take that language in the state statute and do something else with it, and they couldn't get it on. The state would not and to this day has never agreed with that interpretation. So that's why I tell you our clients are still absolutely compliant with state law as it relates to the incidental definition. So if you – and that's the problem we're having here, is addressing – and I know I'm way past, but, Judge Bybee, your point is, wait a minute, can't laws be changed – they get changed all the time. They can. But you've got to follow – if it impacts a protected property right, you still have to follow the proper procedure. That's what a violation of procedural due process is. And that was not done here. Plain and simple. Thank you very much for your patience and indulgence. We thank all counsel for the argument. The case is submitted. And with that, we've concluded the calendar for the week. The Court is adjourned.
judges: Bybee, Christen, Chen